Good morning, your honors. Good morning. May you please the court your honors Karen Basmajian for the appellant, Mr. Shaw, I would like to reserve some rebuttal time please. Your honors, as I know that the court has reviewed the briefs, as well as all the details, I would like to concentrate on the some of the highlights of this case addressing the major points of the argument, addressing the issue of excessive punishment cool and unusual punishment, your honors, this case is where Mr. Shaw has exercised his constitutional right by electing to have a jury of his peers try him for the offenses alleged by the government, said jury acquitted of all the charges except for the three drug related counts. In the course of the trial, the jury has rejected the idea that Mr. Shaw was a leader of any gang or subset. In fact, at the trial witness testimonies also went to portray another individual, Mr. Martinez, a codependent of Mr. Shaw, as the leader of the Broadway Crips subset of the Crips gang. The jury partly based on various witness testimonies and other relevant evidence presented, presented rejected the idea that Mr. Shaw committed any of the acts alleged in the indictment, including selling drugs in furtherance of the game. In fact, most of these documented drug sales for the three convictions convicted counts were made to confidential informants at Mr. Shaw's residence, which was also outside of the game territory, your honors. The district judge, however, sentenced Mr. Shaw as the very dangerous leader of the charges, as well as prior history conduct for which Mr. Shaw served a jail sentence in state prison. The core of his offense for which he received a 420 month sentence was for three separate sales, three separate sales totaling approximately 77 grams of crack cocaine. A black man at age 44 of his life was sentenced to 35 years in federal prison for the sale of 77 grams and for the alleged conduct for which he was acquitted. While the overall jurisprudence of this of our country could justify sentencing a defendant for counts dismissed in favor of a three agreement, sentencing on acquitted conduct goes against all the logic of the justice system, your honors. Counsel, one of the things that struck me was that this was, I had had, uh, had presided over a number of trials of, uh, Broadway gangster crip members, um, of which Mr. Shaw was alleged to be one. And so the court had an unusually fulsome, uh, amount of relevant conduct and background information on your client's role in the offense and cited to that as, uh, sentencing to justify, um, the sentence where the guidelines encourage district judges to look at sentences that are imposed on similar, uh, situated defendants. What was improper here about judge Otero referring to his extensive knowledge of the facts, which is far more than, than a sentencing judge would normally have in the thing that, uh, comes to my head, your honor, a, is the violation of rule 20 or 32 that I've addressed in my briefs. Um, uh, not, uh, not disclosing all the information to the defense and another one, I'm not sure how, how a judge would do that in the sense that he's basically saying, look, I've had a number of these cases involving related defendants. Are you saying he that he was considering that when the guidelines specifically tell him you should look at, uh, comparably, um, situated defendants in determining an appropriate punishment? Yes, your honor. That's what I'm saying. Also, uh, also considering, uh, looking at the, uh, talking about the co-defendants, um, looking at the disparity of the two of the sentences between the co-defendants. I was going to ask, why wouldn't you have, why wouldn't you have had notice of that fact based on the multi count, multi defendant charges of which Mr. Shaw was one of what, 70 some odd defendants, most of whom pled guilty. Uh, I'm sorry. That's all in the pre-sentence report. So I'm trying to, I'm trying to determine whether there is prejudice here from a rule 32 violation. Well, you had notice. I, I do. That's the defense position that your honor, that all the information that the court relied on for sentencing of Mr. Shaw specific about specific acts and specific defendants should have been disclosed to the defense at the time. But the PSR goes on for pages talking about, um, individuals who pled guilty and the sentences that they receive. So how is it, how is what judge Otero did any different other than basically saying, look, I know a lot about the activities of these defendants because I presided over the trials of some of those who did not plead guilty. But the difference here is your honor, the jury acquitted my client. The jury acquitted. I understand it, but this is the, this is relevant conduct. And the sentencing guidelines say that courts are permitted to consider relevant conduct. I guess what I'm, what I'm curious about counsel is, this is a, is an unusually fulsome factual record, which we don't normally see in a straight up plea case where everybody around the defendant is simply pleading guilty here. You've got a judge who's very familiar with the activities of the, uh, of the gang, uh, in his jurisdiction, uh, from all of the defendants who've been charged in the Rico enterprise case. Well, that takes me to, to, uh, actually two issues here in honor. One of them being that, uh, one of the co-defendants that, uh, uh, that was found to be the leader of the gang, Mr. Martinez was sentenced nearly half the, uh, half the, uh, half the sentence of Mr. Shaw. So did Martinez plead guilty? Yes, so yes, he did. And that leads me to the issue of, so Mr. Shaw is being punished for going to trial and getting acquitted of the same very charges that Mr. Martinez pled guilty. So Mr. Shaw, Mr. Shaw, Mr. Shaw had a pretty extensive rap sheet himself. Did he not? I mean, this was not his first time at the rodeo. Uh, well, honestly that he did have a extensive rap sheet. So did Mr. Martinez. But one thing that, and that takes me to the drug issue and of all the calculations that I was going to address your honor is the fact that, uh, he was given a career offender status because of a marijuana charge that he finished sentence back in 1994. But doesn't our case law say that unless the charge is that it can be considered for career offender purposes? Uh, well, this charge was expunged your honor. And it was, it was reduced, but it was not a finding that he didn't commit the conduct. It basically reclassified, I guess this is the way the statute does it reclassified the offense from the felony to what an infraction now. Uh, yes, your honor. And I'm not even sure if it's an infraction anymore. Uh, and the it did, it didn't wipe it off his record. And it looks to me from reading the cases that it has to be a complete expungement before, uh, the, uh, the sentencing court cannot consider it for enhancement purposes. I'm just reading the cases. Um, not necessarily your honor, but the, it's a unique situation here because most of the case law addresses, uh, addresses sentencing. That was, um, that has gone to get addressed the sentencing issues. Uh, that was a reduction subsequent in this case, uh, the infraction, the court in superior, the superior court went back non-proton and changed the entire sentence and addressed it as an initial illegal sentence. No, no, I, I understand. I understand good lawyering to, to get that done in a timely fashion. But the problem is that our cases say that we, even if the court does that, that we can still consider it if, if it was not totally explained. Well, then also we have, uh, then that leads me to the other issue, your honor, that, uh, that was in 1994. So, uh, that was well, 15 years prior to the first alleged offense in, uh, I thought he had some other, I thought he had some other criminal convictions in between. I mean, this guy's been committing crimes pretty regularly for most of his adult life, has he not? Uh, I think what took him to the, uh, uh, career offender status was that very, uh, the conviction of marijuana. I think that, I think that's correct, but my problem is this is a, this is a, this is a, an issue about the movement of history in a sense, because at the time that your client committed the marijuana offense, it was considered to be quite a It may not be. And that it seems to me that the law says, um, that we have to consider it the way that it was considered at the time, unless there's been a recognition that he didn't commit any offense at all. Um, how is that wrong? Your honor. Um, I understand on the legal justification, but that's one of the reasons why we are here is to remedy that situation. Basically, we're looking at a guy who served 16 months, uh, back in 1994 for a conviction that's currently an infraction and not even a crime that's unjust in and of itself back then. And then that same sentence, that same sentence that he served, that same crime is being used in this instance for him to serve nearly a life sentence, a 35 year old sentence, your honor. He, he was 44 at the time he was sentenced 35 years minus good time, work time. Some, uh, he's going to come out, uh, if he's alive in his late seventies. So technically this would say that this is a technically a life sentence. So he would have been a category six offender, even without the aid 51 enhancement, right. Based on his criminal record. I'm looking at numerous felony convictions or felon in possession of a firearm, other transportation and sale of controlled substances, um, inflicting corporal injury on a person. This guy's got a long criminal record for which he served his time, your honor. And he served his sentences. Uh, the, the relevant issue here is I know this district court can consider all the facts, all the prior history and all the under 35 53 and under case law. I know that, and I'm not arguing any of that, but what I'm arguing here is the injustice here, your okay. Um, he technically the basis for him to take him from, uh, a category of a career offender that would put him, put him in a category of nearly a life sentence where the calculations of the, uh, uh, of the drug offenses calculation of his marijuana conviction, as well as the ratio of the crack cocaine versus powder cocaine calculation. Could the district court have reached the same sentence if it had run the drug convictions consecutively? I don't believe so. Aren't they 20 year offenses? In fact, they may be even higher because of the fact that he has prior drug trafficking conviction. I think he probably could have come pretty close to 420 months. Um, I, I not sure if that would be the right calculation. I couldn't answer that question. Okay. So we can figure that out. Yeah. And that's why we're here. Your honors to remedy the situation and fix the injustices. I think I'm running out of time. Uh, uh, we'll give you a minute on rebuttal. Um, it's hard to, whenever you're ready, may it please the court Ilana Artson on behalf of the United States, the district court here correctly determined that the defendant was a career offender based on the very definitions set forth in the guidelines themselves. The guidelines provide that a defendant is a career offender. If he committed the instant offense subsequent to sustaining two felony convictions for either a controlled substance offense or a crime of violence, and it defines sustained as being sustained at the time that guilt is established either by plea or by trial. So there's no dispute that under the definitions in the guidelines, this defendant was a career offender at the time that he sustained that conviction in 1994, it was a felony. The defendant instead is relying on some carve outs to carve outs that are foreclosed by this court's decision in Prado. First, the defendant claims that this conviction was expunged. Prado says Prop 64 convictions are not expunged, they are downgraded. Second, the defendant relies on a carve out for invalidated convictions. This conviction was not invalidated for any defect in the conviction. In the proceedings, there was no constitutional invalidity, there was no error of law, there was no innocence. Instead, Prado held that Prop 64 is a policy rehabilitative type of situation, and that the guidelines in Application Note 10 provide that only convictions set aside, sorry, that convictions set aside for reasons unrelated to innocence or issues of law that is for policy reasons are counted under the guidelines. Finally, there is an Application Note 4 to 4B1.1 that the parties discussed at sentencing and that provides that in the situation we have here, where the prior felony is a misdemeanor at the time of sentencing, that can be a basis for a downward departure. That was discussed at sentencing, the district court did not depart and it did not abuse its discretion in declining to do so and in sentencing the defendant to within guidelines sentence. I would point out that the PSR here did not identify any factor warranting departure or experience. And for good reason. This defendant was a career offender in every sense of that word. After this 1994 conviction, Judge Tolman noted he had 18 criminal history points that placed him in Category 6, regardless of whether he was a career offender or not. The defendant committed a series of crimes that escalated in seriousness, a manslaughter conviction for which he served seven years. He had another drug trafficking conviction for selling cocaine. And I would point out here that the convictions that were charged in the 851 enhancement that raised the maximum penalty to life on count 12, that maximum penalty was, even aside from the marijuana conviction, was life based solely on the other cocaine trafficking conviction. And then we had two assaults, one with a deadly weapon for which the defendant served eight years. So this was, as the district court said, a violent, dangerous defendant. In addition, the district court made clear that it had presided over the defendant's trial. So it was a lengthy trial. And in order to prove the racketeering conduct, the court heard a tremendous amount of evidence about the gang itself. It gave it an opportunity to see where defendants role fell in connection with other defendants in the case. There was only one other trial that was of Tony Gordon, and a number of other defendants who pled guilty. The evidence at trial, which the district court repeatedly stated it was relying on, provided a host of evidence to show that this defendant was a longtime drug trafficker. He had that conviction back in 2001 for selling crack, as I already stated. But there was also evidence at trial that in 2002, the defendant had transported along with another gang member a kilo of cocaine to Omaha, Nebraska. He made the other individual take the fall for that. There was a video of one of the transactions in this case, showing 10s of 1000s of reflecting that he was a supplier of a large quantity of drugs. There was a recording where he talked about whipping it up, indicating that he was an individual who cooked powder into crack cocaine. There was a recording discussing sale that he had made to other gang members for resale. In the end, the informant was the one who who bought that, but it was clear that this was a supplier who sold to other gang members for resale. And the district court also heard extensive evidence at the trial of the two murders that the defendant was involved in. And that separated him from every other defendant in this case, because the other the other defendants to the defense refers to Mr. Martinez, Sumter, Lord Kelly, those were all individuals who pleaded guilty and who had lower guidelines, and none of them participated in a murder. This gives me for interrupting, I just want to make sure that I understand because I, I, I'm not, I don't go through the sentencing guidelines on a daily basis. So if he did not have explains me if he did not have the career offender status, and just had his other records of conviction, what would the that it would have found offense level 34. And criminal history category of seven and the offense level 34 was based on the relevant conduct for drug trafficking. There was extensive evidence at trial about drug trafficking. And at level 34. And criminal history category six, it would have been 262 to 327 months. But the district court stated that even if the defendant were not a career offender, this sentence was warranted based on the defendants participation in a variety of criminal activity that was presented at trial and his very lengthy criminal history. In particular, the two murders, one of which was a career offender predicate, that was the manslaughter. And the second was during the investigation of this case, that was the murder of WS. The district court also cited recordings in in June where the defendant was talking about going to the hood party for the rival gang and blowing them away. Fortunately, the police were able to foil that by going to the party breaking it up and diverting the Broadway Crips gang members who were there to try and shoot up that hood party. But we have that on tape. So the district court here was relying on extensive evidence presented at trial. And the Supreme Court made clear in Watts that there is no that the district court may rely on acquitted conduct. And I would point out that Watts also made clear that the jury does not necessarily reject any facts when it acquits. Watts also made clear that Section 1B 1.3, the relevant conduct provision, it directs consideration of relevant conduct whether or not the defendant was convicted of that conduct. So while I would submit that this issue is preserved for potential Supreme Court review, any claim regarding acquitted conduct is foreclosed under Mercado and Watts. With respect to Rule 32, the notice issue, the notice issue here, I think, as Judge Chalmers pointed out, there was no plain error under Rule 32. First of all, the pre-sentence report lays out all of the co-defendants, their pleas, their sentences, what crimes they were convicted of. The court and this court certainly have the indictment to see what charges those counts involved. And there is nothing in this record to suggest that the district court relied on any facts that were not presented at defendant's trial. The district court repeatedly stated during sentencing that it was relying on the trial over which it had presided and the evidence at this defendant's trial. So the judge's reference to his experience is what all judges do when they determine how to evaluate the relative culpability of a defendant and look at whether there is any unwarranted sentencing disparity. I think that Irizarry made this point too. The Supreme Court in commenting on whether or in holding that notice is not required of a variance said, well, notice shouldn't be required for those types of garden variety considerations that a defense lawyer or any lawyer would prepare for at sentencing, including issues of sort of relative culpability. So there isn't any requirement in Rule 32 for the judge to give notice of his experience. It actually doesn't seem very different than what judges are required to do. And it doesn't seem very different from a confidential sentencing recommendation, which doesn't have to be disclosed. Well, counsel, can you, this was a, as I think Judge Tallman has referenced, this was a multi-count, multi-defendant indictment. Is that correct? Yes. And were all the defendants, were they all directed, did it all go before this judge? Yes. There may have been some defendants who were sentenced by another judge, but I think the vast majority were sentenced by this judge. And, and so, so are you saying that, are you saying that, that the judge only relied on matters that came before him in this indictment? Or did he rely on what he knew from, with respect to the related matters? Are you saying that it would have been improper for him to rely on what he had learned from the related matters that were sent to him as part of the same indictment? Or are you saying that he just didn't do it? I'm trying to understand. Well, I'm saying both of those things. First, there is nothing in this record to suggest that the district court relied on the pleas or factual admissions that were made during the pleas of other defendants, or that were presented at the other trial. The district court repeatedly stated that it had presided over the trial and that based on the evidence presented at trial, it found that he was responsible for 2.8 kilograms of crack and that he had participated in the murders involving LR and WS. But I'm also saying that I think Rule 32 is clear that it doesn't apply to opinions or conclusions. It applies only to facts and disclosures only required of specific facts that the court relies on. There's nothing here to suggest that that's what happened. A judge's experience, either in having been on the bench for a number of years and seen similar cases, or presiding in this particular case, and having presided over sentencings of others who were convicted of other crimes and have lower culpability, that is the bread and butter of what district judges do. And there's nothing in Rule 32 that suggests that they have to reinvent the wheel of their experience at every sentencing and lay out every fact they may have learned in their experience. No, I understand that. I'm just trying to understand the government's position with respect to whether the judge could rely on his experience with respect to the defendants in the related matters that he presided over that were a part of the same indictment. Yes, the judge can rely on his general experience. If there is a specific fact that the court is using to increase the That's what Warr held, that if there's specific factual information the court is relying on, that should be disclosed. But again, in Warr, there was no plain error, and here there isn't any either, because the district court would have imposed the same sentence. And there is, again, nothing to suggest that the court relied on some specific facts that the defendant did not have an opportunity to address. That's the concern of Rule 32. I see that my time is almost up. Are there any other questions or matters that the court would like me to address? Thank you. Seeing none, we ask that the court affirm. Ms. Bajan, you have a minute. Your Honors, I respectfully disagree with the government's that the district court did not rely on the co-defendant's factual information. In fact, all the sentencing records show that the court alluded to the information that the court received from the defendants. And I respectfully also disagree with the government that the defendant should not have received the downward departure. Essentially, what the government is saying is that because the defendant exercised his right to jury trial, and he did not plead guilty to the charges, he should not have received the downward departure. So what's your response to the government's argument that by presiding over Shaw's trial, the district court had been in the gang? And I guess my related question is, how does the district judge sort of compartmentalize in his or her mind, information that he or she may know about the gang activities of co-defendants that have previously been sentenced? Your Honor, well, I do understand the court's questions and the concerns here. But here is the district court presided over a trial where the jury clearly came back and acquitted the defendant on all the charges. But we're beyond that. I'm just saying, how does the judge compartmentalize what he learned at Shaw's trial, versus what he may have learned from the sentencing or the one other co-defendant trial that he presided over? It may be difficult to do that. But at the same time, in this instance, where the judge uses that information to sentence Mr. Shaw, he gave much more lenient sentence to that very defendant who pled guilty to those charges. But what specific... I'm still searching for prejudice here. What specific evidence from another defendant's case did the district court articulate that surprised... Were you the sentencing attorney or was it someone else in your office? No, Your Honor, someone else was. All I have is the record. So what evidence did the district court rely on that surprised defense counsel for which Rule 32 notice should have been given? The fact that there was statements as to that Mr. Shaw directed the killings of individuals, that all the drug sales were gang-related, which was really rejected by the jury. There were a number of... Was all that evidence introduced at the trial, whether or not the jury bought it, is a separate question. I'm just trying to figure out how there was prejudice here from unarticulated information that the district court may have had in his mind based on his years of familiarity with the activities of the street gang. It's really hard for me to classify right now to what degree, what evidence was specific produced at the time. The problem is you're asking us to reverse for Rule 32 violation without telling us what the harm was. And I'm having a hard time understanding why we should do that. Well, that's because the judge relied on information from co-defendants to sentence the defendants. What information? Shaw had a trial at which a lot of this conduct was talked about. So that the court can consider under related conduct, even if he was acquitted of it. So I just don't see the harm here from the 32 violation where all these co-defendants were listed in the pre-sentence report and defense counsel was on notice that he was accused of engaging in a RICO enterprise with the 77 other defendants. But it seems to me the closest that you come here is when the judge indicated that he was the most sophisticated, more sophisticated than the other defendants. But I'm having a little trouble understanding what should have been done under Rule 32 with respect to that judgment. We say in terms of judicial administration that the judges ought to have these cases and become familiar with all the facts so that we can, we can have a fairer, more expeditious resolution of these multi-defendant cases. So I'm struggling a little here. And your honor, exactly. I agree with you. And in particular where the judge says that he's more culpable than the other defendants, that's one evidence that should have been disclosed as to how is he more culpable than the other co-defendants. And that was information that was not provided to defense. That didn't come out at trial, his activities in leading and directing murders and drug sales and drive-by shootings of rival gang. Uh, uh, but then I, I don't know if it came out as to how he was more culpable than the other defendants were obviously that was rejected by the jury. Okay. All right. I think I have your argument. Thank you very much. Thank you. Thank you both for your excellent argument. That case has been submitted. Thank you, your honors. Thank you both. Thank you.
judges: SCHROEDER, TALLMAN, LEE